## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CARLOS MASCARENAS,

      Plaintiff,

v.                                 CIV NO.  1:15-cv-00248-CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and
Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 21), filed
on December 17, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse
and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 25), filed on
March 21, 2016; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a
Rehearing* (the "Reply"), (Doc. 28), filed on April 8, 2016.

On August 17, 2012, Carlos Mascarenas filed an application for supplemental
security income ("SSI"), alleging disability beginning June 15, 2010. (Administrative
Record ("AR") 63-64). His application was denied on November 8, 2012, (AR 85-88),
and also upon reconsideration. (AR 94-97). Mr. Mascarenas filed his request for a
hearing before an Administrative Law Judge ("ALJ") on July 28, 2013, (AR 98-99); and a
hearing was set for May 13, 2014 before ALJ Barry O'Melinn. (AR 30-61). Mr.
Mascarenas and Leslie White, an impartial vocational expert ("VE"), testified at the
hearing. (*Id.*). Mr. Mascarenas was represented at the hearing by Michelle Baca. (AR
17). ALJ O'Melinn issued his opinion on September 3, 2014, finding that Mr.

Mascarenas was not disabled under 20 C.F.R. § 416.920(f) at any time from the alleged disability onset date through the date of the decision. (AR 25). Mr. Mascarenas then filed an application for review by the Appeals Council, (AR 13), which was denied, (AR 7-12), making the decision of ALJ O'Melinn the final decision of the Commissioner of the Social Security Administration (the "Commissioner," "SSA") for purposes of this appeal.

Through new counsel, Michael Armstrong, Mr. Mascarenas argues that the ALJ committed reversible, legal error by: (1) failing to account for the identified limitations and medical opinion evidence from medical sources in the record; and (2) relying on erroneous reasoning and irrelevant evidence to make a credibility determination. (Doc. 21 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. In addition, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly analyze and weigh the medical opinions in the record, the Court finds that the Motion should be **GRANTED** and the case be **REMANDED** for further proceedings.

I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not

2

entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III.   Background

Mr. Mascarenas applied for SSI alleging bipolar disorder, hypertension, and depression. (AR 63). At step one, the ALJ determined that Mr. Mascarenas had not engaged in substantial gainful activity since August 17, 2012, the application date. (AR 19). At step two, the ALJ concluded that Mr. Mascarenas was severely impaired by an

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

affective disorder, a personality disorder, posttraumatic stress disorder, anxiety, major depressive disorder with psychotic features, and polysubstance abuse. (AR 19). At step three, the ALJ explained that he considered whether Mr. Mascarenas' impairments met or satisfied any of the listed impairments. (AR 19). The ALJ determined that none of Mr. Mascarenas' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R §§ 416.920(d), 416.925, and 416.926. (AR 19).

The ALJ proceeded to step four. First, he analyzed Mr. Mascarenas' subjective complaints of his psychological symptoms and the objective evidence in the record. (AR 20-25). The ALJ found that Mr. Mascarenas' statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 22). The ALJ discussed Mr. Mascarenas' self-reported daily activities, as well as several reports from Mr. Mascarenas' physicians and consultative examiners ("CEs"). (AR 20-25).

The ALJ ultimately found that Mr. Mascarenas has the RFC to perform a full range of work at all exertional levels, but with several nonexertional limitations. (AR 21). The nonexertional limitations include: (1) understanding, carrying out, and remembering simple instructions; (2) making commensurate work-related decisions; (3) responding appropriately to supervisors, coworkers, and work situations; (4) dealing with changes in work settings; (5) maintaining concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout the day; (5) working primarily with things and not people; (6) interacting only occasionally with the public; and (7) he could be around coworkers during the course of the workday, but is limited to only occasional interactions with them. (AR 21). The ALJ then determined that Mr. Mascarenas is capable of performing his past relevant work as a laborer, because the

work-related activities are not precluded by his RFC. (AR 25). The ALJ ultimately

concluded that Mr. Mascarenas is not disabled pursuant to 20 C.F.R. § 416.920(f). (AR

25).

### IV.    Analysis

Mr. Mascarenas argues that the ALJ committed reversible, legal error by: (1)

failing to account for the identified limitations and medical opinion evidence from

medical sources in the record; and (2) relying on erroneous reasoning and irrelevant

evidence to make a credibility determination. (Doc. 21 at 1).

The Commissioner responds that the ALJ properly weighed all of the medical

opinions in the record. (AR 11-16). The Commissioner further argues that the ALJ

reasonably concluded that Mr. Mascarenas' descriptions of his symptoms were not fully

credible. (AR 7-10). Finally, the Commissioner maintains that the ALJ's decision was

supported by substantial evidence and free from any harmful legal error. (AR 16).

### A.  *Requirement to Weigh All Medical Opinions in the Record*

Social Security Regulations require the ALJ to evaluate every medical opinion in

the record, including the opinions of non-examining State agency physicians. *See* 20

C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Every

medical source opinion should be weighed by the ALJ in consideration of the following,

applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4) consistency
> between the opinion and the record as a whole; (5) whether or not the physician
> is a specialist in the area upon which an opinion is rendered; and (6) other
> factors brought to the ALJ's attention which tend to support or contradict the
> opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927 (c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, No. 06-6343, 244 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished).

### B.  The ALJ's Analysis of Medical Opinions in the Record

With regard to opinion evidence in the record, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 21). In his decision, the ALJ discusses some of the findings of Dr. Davis Brimberg, Ph.D. and Rebekah Hodge, MA, LMHC,[2] but does not adequately explain the weight he afforded their assessments. Additionally, the ALJ weighs the findings of Dr. Elizabeth Chiang, M.D., Dr. N. Phoenix Anderson, Ph.D., and Dr. Katharine Danner, M.D., but does not adequately account for their findings in the RFC.

### 1.  The Findings of Dr. Chiang

Dr. Chiang, a State non-examining psychological consultant, performed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment ("MRFCA") of Mr. Mascarenas' impairments. (AR 66-71). Dr. Chiang diagnosed Mr. Mascarenas with "other disorders of gastrointestinal system and affective disorders." (AR 67).

In Section I of her MRFCA, Dr. Chiang found that Mr. Mascarenas was

---

[2] LMHC stands for Licensed Mental Health Counselor. (AR 7).

moderately limited in his ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (10) respond appropriately to changes in the work setting.

In Section III of her MRFCA, Dr. Chiang adopted findings made by Dr. Brimberg and notes provided by Mr. Mascarenas in his Function Reports. (AR 70). Mr. Mascarenas saw Dr. Brimberg, a CE, on October 30, 2012 and was diagnosed by Dr. Brimberg as having depression, not otherwise specified, rule out major depressive disorder and bipolar disorder, reported. (AR 264). Dr. Chiang states that she placed great weight on Dr. Brimberg's opinion. (AR 68). Summing up her findings and other evidence, Dr. Chiang concluded that Mr. Mascarenas' "[a]llegations are credible but do not interfere with [his] ability to do all types of work. [Mr. Mascarenas] can understand, remember, and carry out simple work." (AR 71). The ALJ stated that he found "that the opinions of [the] state agency physicians that [Mr. Mascarenas'] impairment(s) neither met nor equaled the severity of a listed impairment are well reasoned and supported by the evidence of record." (AR 20).

Mr. Mascarenas argues that although the ALJ adopted some of Dr. Chiang's moderate limitations, he failed to either accept or reject other moderate limitations documented by Dr. Chiang in Section I of the MRFCA. (Doc. 21 at 15-16). The Commissioner maintains that Dr. Chiang translated the limitations outlined in Section I into specific opinions as to Mr. Mascarenas' RFC in Section III. (Doc. 25 at 14-16). Accordingly, the Commissioner argues that the ALJ was not required to separately address the limitations in Section I of the MRFCA. (Doc. 25 at 16). Further, the Commissioner maintains that the ALJ included additional limitations beyond the ones identified by Dr. Chiang in Section III. (Doc. 25 at 16). Finally, the Commissioner states that it is Mr. Mascarenas' burden to show how the "limitation[s] are not reflected in the additional functional restrictions the ALJ chose to include in the RFC finding." (Doc 25 at 16).

The Tenth Circuit recently addressed the issue of Section I versus Section III findings in an unpublished decision. *See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished). In *Carver*, the claimant argued that the ALJ failed to incorporate all of the limitations assessed pursuant to a non-examining, State Agency's MRFCA, because the Section I limitations were left out of the RFC but the Section III limitations were included verbatim. The Tenth Circuit explained that the MRFCA's Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the provisions of the SSA's POMS, which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal

9

mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618-19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation found in Section I must be described in narrative format in Section III. *Id.* at 619 (citing POMS DI 24510.063 B.2.).

Further, the Court explained that "[t]he POMS also provides that the discussion of all mental capacities and limitations in Section III must be in narrative format, and that Section III is for explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* (quotations omitted). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability . . . the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224-25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11-cv-00333–WYD, 2012 WL 1044746, at *5-6 (D. Colo. Mar. 28, 2012) (unpublished)).

Applying these principles in *Carver*, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in his ability to accept instructions and respond appropriately to supervisor criticism. *Id.* In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the

claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619–20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was "tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

Here, the Court is not convinced that Dr. Chiang's Section III findings adequately explain the moderate limitations that she identified in Section I. Although she noted ten moderate limitations in Section I, in Section III she simply opined that Ms. Mascarenas can "understand, remember, and carry out simple work." (AR 69-71). The Court cannot say that this one statement adequately explains the ten different moderate limitations that Dr. Chiang found in Section I. Because Dr. Chiang's Section III narrative failed to describe the effect of the Section I moderate limitations on Mr. Mascarenas' ability, "the MRFCA cannot properly be considered part of the substantial evidence supporting [the] ALJ's RFC finding." *Carver*, 600 Fed. Appx. at 619. As a result, the ALJ's reliance on Dr. Chiang's opinion in Section III is not supported by substantial evidence. *Id.*; *Baysinger*, 2012 WL 1044746, at *7; *Muller v. Colvin*, No. 12-cv-538 LAM, at *17 (D.N.M. filed June 11, 2013) (unpublished).

The Commissioner argues that Mr. Mascarenas' argument "is particularly specious" because the ALJ included more limitations in the RFC than Dr. Chiang included in her Section III analysis. (Doc. 25 at 16 (citing *Chapo v. Astrue*, 682 F.3d

1285, 1288 (10th Cir. 2012))). Contrary to the Commissioner's assertion, the ALJ did

not simply "temper [the] extremes" in Dr. Chiang's opinion. Indeed, it appears that the

ALJ picked some of the moderate limitations from Section I that he agreed with, while

leaving out the ones that he did not. It is well-settled that "[t]he ALJ may not pick and

choose which aspects of an uncontradicted medical opinion to believe, relying on only

those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208,

1219 (10th Cir. 2004) (internal citations omitted). This selective application of Dr.

Chiang's report without explanation is error, and requires a remand in order for the ALJ

to explain the evidentiary basis for her RFC determination. *Haga v. Astrue,* 482 F.3d

1205, 1208 (10th Cir. 2007).

### 2.  *The Findings of Dr. Anderson*

Dr. Anderson is a CE that performed a Comprehensive Mental Status Evaluation

on Mr. Mascarenas on May 23, 2013. (AR 292). Dr. Phoenix diagnosed Mr. Mascarenas

with intermittent explosive disorder; major depressive disorder, recurrent, severe without

psychotic features; social phobia (social anxiety disorder), generalized; and avoidant

personality disorder. (AR 294). Dr. Phoenix based his evaluation on his conversation

with Mr. Mascarenas and the Mental Disability Evaluation from Dr. Brimberg, a progress

report, and the disability report from the appeals office of SSA. (AR 292).

Dr. Anderson did not complete an MRFCA; however, he did rate Mr.

Mascarenas' level of impairment for some work related activities. Dr. Anderson found

that Mr. Mascarenas had a mild impairment with regard to: (1) understanding and

remembering complex instructions; (2) carrying out complex instructions; and (3) ability

to make judgments on complex work related decisions. (AR 294-95). Dr. Anderson

12

found a moderate limitation in Mr. Mascarenas' ability to respond appropriately to usual work situations and to changes in a routine work setting and a marked limitation in Mr. Mascarenas' ability to interact appropriately with supervisors. (AR 295). Finally, Dr. Anderson found that Mr. Mascarenas had an extreme impairment in his ability to interact appropriately with the public and interact appropriately with co-workers. (AR 295). In his overall prognosis, Dr. Anderson found that "[g]iven [Mr. Mascarenas'] forensic, and paucity of psychiatric and treatment history, and the results of this evaluation, it appears that the mental health symptoms are chronic in nature and will not abate on their own within a one year period." (AR 294). Dr. Anderson did caution that his evaluation "was limited in scope" due to seeing Mr. Mascarenas for only one session. (AR 294). The ALJ stated that he gave Dr. Anderson's opinion little weight because his "opinion is based on a one-time assessment of [Mr. Mascarenas] and [Mr. Mascarenas'] subjective complaints rather than findings upon examination." (AR 24).

Mr. Mascarenas argues that the fact that the Dr. Anderson performed a "one-time assessment" and that the opinion was "based on subjective complaints" is not a reasonable basis for rejecting the opinion. (Doc. 21 at 17). The Commissioner argues that Dr. Anderson himself stated that the "usefulness of his opinion" was limited based on the fact that he only examined Mr. Mascarenas once. (Doc. 25 at 11). Additionally the Commissioner maintains that the ALJ reasonably found Mr. Mascarenas to not be credible, so Dr. Anderson's opinion based on those statements should be discounted. (Doc. 25 at 13).

Both Dr. Anderson and Dr. Brimberg examined Mr. Mascarenas one time for the SSA. Dr. Chiang and Dr. Anderson reviewed Dr. Brimberg's opinion and Dr. Chiang

placed "great weight" on it. (AR 68, 292). In fact, Dr. Brimberg's opinion is the only

source of evidence noted in Dr. Chiang's analysis and the majority of Dr. Chiang's

Section III analysis is simply a recap of Dr. Brimberg's evaluation. In turn, the ALJ

appears to have given significant weight to Dr. Chiang's opinion; consequently, although

he does not state it, the ALJ effectively placed great weight on Dr. Brimberg's

evaluation.[3] The ALJ does not discuss why it was appropriate to place great weight on

Dr. Brimberg's opinion, but not on Dr. Anderson's when they performed similar

examinations. Both examinations were one-time assessments and based primarily on

Mr. Mascarenas' subjective complaints.

Furthermore, given that most CEs are one time examinations, the Tenth Circuit

has held that while it may be appropriate to not accord the "conclusive weight of a

treating medical-source opinion . . ., it is not by itself a basis for rejecting [the opinion] –

otherwise the opinions of [CEs] would essentially be worthless, when in fact they are

often fully relied on as the dispositive basis for RFC findings" *Chapo v. Asture*, 682 F.3d

1285, 1291 (10th Cir. 2012). According to the regulations that govern medical opinions,

an examining medical source "is given particular consideration and entitled to more

weight than a doctor's opinion derived from a review of the medical record." *Id.* (citing

20 C.F.R. §§ 404.1527(d)(1), 416927(d)(1); *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th

Cir. 1996)).  Although an ALJ may discount or dismiss an examining source opinion, the

ALJ must "provide specific, legitimate reasons for rejecting it." *Id.* (quoting *Doyal v.*

*Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ rejected Dr. Anderson's opinion,

even though it was obtained in the same manner as Dr. Brimberg's; therefore, the Court

cannot say that substantial evidence supports the weight the ALJ placed on Dr.

---

[3] The ALJ's discussion of Dr. Brimberg's opinion will be addressed later in this opinion.

Anderson's opinion.

### 3. The Findings of Dr. Danner

Dr. Danner is a resident in the Department of Psychology at UNM Hospital who saw Mr. Mascarenas on April 5, 2014 for an evaluation. In his Motion, Mr. Mascarenas refers to Dr. Danner as a treating physician. The regulations define a treating source as, "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902. From the record, it appears that Mr. Mascarenas only saw Dr. Danner one time, thus the Court agrees with the Commissioner that she is not a treating source. (Doc. 25 at 13). Dr. Danner would more appropriately be classified as a nontreating source, a "psychologist . . . who has examined you but does not have, or did not have, an ongoing relationship with you." 20 C.F.R. § 416.902.

Dr. Danner examined Mr. Mascarenas after he took methamphetamine in an attempt to kill himself. (AR 45, 324). Dr. Danner diagnosed Mr. Mascarenas with methamphetamine abuse, opiate dependence, psychosis not otherwise specified, and with a personality disorder not otherwise specified. (AR 325). Dr. Danner also found him to have a global assessment of functioning ("GAF") score of 40.[4] The ALJ dismissed Dr. Danner's opinion because Mr. Mascarenas had used methamphetamine the night before the examination and "was quite possibly still experiencing effects from the

---

[4] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32)). "A GAF of 31-40 is extremely low, and indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006).

drugs." (AR 25). Additionally, the ALJ rejected the opinion because Dr. Danner primarily relied on Mr. Mascarenas' own claims, which the ALJ found to not be credible. (AR 25).

Mr. Mascarenas argues that the ALJ supplied his own medical explanation for Dr. Danner's opinion. (Doc. 21 at 18). The Commissioner states that Mr. Mascarenas admitted that he was under the effects of drugs when he saw Dr. Danner, so it was appropriate to place little weight on Dr. Danner's opinion. (Doc. 25 at 14).

An ALJ must consider the opinion of a nontreating source, and to the extent he rejects it, must give "specific legitimate reasons" for doing so. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). In his testimony, Mr. Mascarenas admitted that when he took the methamphetamine, he "went more crazy on it. I just lost my mind on it . . . ." (AR 45). Mr. Mascarenas went to UNM Hospital because he felt like he had a reaction to the drug, instead of overdosing. (AR 46). Given the ALJ's specific reasoning, the Court does not find error in the ALJ placing little weight on Dr. Danner's opinion.

### 4. The Findings of Dr. Brimberg and Ms. Hodge

Dr. Brimberg and Ms. Hodge both saw and evaluated Mr. Mascarenas. The ALJ referred to some of the findings made by both examiners, but did not assign any weight to either of the opinions. The Court is unable to meaningfully review the ALJ's findings of these opinions. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that in the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported

by substantial evidence."). Because the Court is remanding the case to properly analyze and weigh the other opinions on record, the Court recommends that the ALJ specifically analyze and weigh the opinions of Dr. Brimberg and Ms. Hodge.

### V.    Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly analyze and weigh the medical opinions of the medical sources in the record. On remand, the ALJ should properly analyze and weigh all of the medical opinions in the record. The Court does not decide any other issue raised by Mr. Mascarenas, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 21), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE